THE NEW YORK, CHICAGO & ST. LOUIS RY. CO. *v.* THE EUCLID BUILDERS SUPPLY CO.

*Carriers — Limitation of liability — Value of goods at shipping point — Bill of lading void, when — Misdelivery of goods.*

The provision of a bill of lading that in case of loss the damage for which the carrier shall be liable shall be computed on the basis of the value of the goods at the time and place of shipment, including freight charges, is against public policy and will not be enforced, where such provision was not agreed to in consideration of a reduced freight rate and the freight rate was not based on the value of the goods and where the goods were misdelivered without fault on the part of the shipper or consignor.

(Decided June 27, 1919.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Tolles, Hogsett, Ginn & Morley,* for plaintiff in error.

*Mr. H. B. Fuller,* for defendant in error.

WASHBURN, J.  Defendant in error, The Euclid Builders Supply Company, had consigned to it a carload of lime, to be shipped from one point in Ohio to another point in Ohio, over the road of the plaintiff in error, The New York, Chicago & St. Louis Railway Company.

The shipment arrived at the place of destination, which was Cleveland, but instead of the railway company delivering the lime to the consignee, it delivered the same to a competing concern, and the consignee not having consented to such delivery and not being at fault brought this suit to recover the value of the lime.

The case was submitted upon an agreed statement of facts, and the only question to be determined is as to whether or not the provision of the bill of lading, that the amount of loss or damage should be computed on the basis of the value of the property at the place and time of shipment, is a valid provision, binding upon the parties.  If that provision is not valid, the judgment of the municipal court for $205.97, the value of the property at the place of destination and time of delivery, is correct, and if said provision is valid then the judgment of the lower court should have been for $121.72, the value of the property at the place and time of shipment.

The provision of the bill of lading in question is as follows:

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the place and time of shipment under this bill of lading, including the freight charges, if paid."

This provision was not agreed to in consideration of a reduced freight rate, nor was the freight rate based upon the value of the goods.

The misdelivery of the goods, when neither the shipper nor consignee was at fault, was a conversion of the property by the carrier, and but for the above provision of the bill of lading the carrier would be liable, at common law, for the value of the goods at the place of conversion, which was the place of delivery stipulated in the bill of lading.

The delivery to another was either knowingly wrongful or plainly the fault and negligence of the carrier, and in a shipment of the character shown in this record it is against public policy to permit the carrier to limit his liability, in whole or in part, for loss occasioned by his negligence or wilful act:

"1. Where a common carrier claims immunity for the loss of goods with which he had been intrusted, on the ground that such immunity is secured by a special agreement, the burden is on him to prove that the loss was occasioned without his fault.

"2. The only effect of such an agreement is to relieve the carrier from the liabilities imposed by the common law where he is free from fault or neglect." *Union Express Co.* v. *Graham,* 26 Ohio St., 595.

"Where the action against the carrier is to recover on his common-law liability for losses occur-

ring at the point of delivery, after the transit is ended, but before notice of delivery to the consignee, and the defendant claims exemption from such loss by virtue of a condition of the bill of lading to that effect; he must aver and prove, not only that this condition was assented to, but that the loss happened without any fault or neglect on his part, and the failure to establish such assent or show due and proper care to prevent the loss, entitles the plaintiff to recover." *Gaines* v. *Union Transportation & Ins. Co.*, 28 Ohio St., 419.

"A common carrier is liable for the value of the goods lost through its negligence, notwithstanding the bill of lading provides that the carrier shall not be liable beyond an amount named therein, when it is understood by the parties that the sum so agreed on is less than the value of the goods. Such an agreement can at most cover a loss arising from some cause *other than the negligence or default* of the carrier or his servants, and the rule of damages is the same, although less is charged and paid for the transportation than when the exempting clause is omitted." *U. S. Express Co.* v. *Backman*, 28 Ohio St., 144.

It is true that in Ohio, as elsewhere, in cases where the loss was not occasioned by the wilful act or negligence of the carrier, an agreement fixing the amount of recovery in case of loss, entered into in consideration of a reduced freight rate, has been upheld. Such was the case of *B. & O. Rd. Co.* v. *Hubbard et al.*, 72 Ohio St., 302, where the court pointed out that the provision in that case was not a stipulation to exempt from liability for

negligence.    The same principle is applied in *Pennsylvania Co.* v. *Shearer,* 75 Ohio St., 249.

But we hold that the doctrine of these cases does not apply where the loss is occasioned by such wilful act or gross negligence of the carrier as amounts to a conversion by him, and where there was no reduced freight rate granted as a consideration for the stipulation.

We are the more readily led to this conclusion by a consideration of the growth and development of public policy in reference to this general subject as shown by the decisions of the United States courts, the courts of the various states, and the laws passed by congress and the legislature of Ohio.   Before there were any statutory enactments on the subject the provision involved in the case at bar was upheld in many cases, and even after there was legislation by congress the Interstate Commerce Commission approved such a provision, particularly where there was a reduced freight rate to support it, which led to further legislation by congress, and recently the Interstate Commerce Commission on its own motion made another investigation on the subject, and, "upon investigation of all the facts of record and of the common law affecting bills of lading, its modification by federal statutory law, and the duties and powers of the commission thereunder," found that the provision here in question was unlawful and void in respect to property not shipped under rates dependent upon declared or agreed values, as in the case at bar.

This ruling is supported by many well-reasoned cases, one of which is the case of *M'Caull-Dinsmore Co.* v. *C., M. & St. P. Ry. Co.,* 252 Fed. Rep.,

664, which was decided after the recent enactments by the United States congress on the subject. In that case, in view of the fact that the liability of the carrier would have been at common law the value of the goods at the point of destination at the time when they should have been delivered, and in so much as that was the actual loss to the shipper caused by the failure of the carrier to deliver the goods at that time and place, it was determined that the stipulation in question in a bill of lading was a limitation of the liability of the carrier and of the amount of recovery, and was, therefore, unlawful and void.

In view of the federal legislation on the subject, the holdings of the United States courts thereafter, and the action of the Interstate Commerce Commission, if the shipment in the instant case had been made from one state to another the validity of the provision in question would not be claimed. The desirability of uniformity in such matters is recognized as a matter of public policy in a recent case in the supreme court of Ohio, *Erie Rd. Co.* v. *Steinberg,* 94 Ohio St., 189, 223.

Moreover, we think that this same public policy is indicated by the laws enacted by the legislature of Ohio in recent years. Section 8993-1, General Code, provides that bills of lading for intrastate shipments shall contain certain provisions; Section 8993-2, General Code, provides that other terms and conditions may be inserted in such bills of lading provided they are not contrary to law or public policy; and Section 8994-1, General Code, provides that a carrier shall be liable for any loss, damage or injury to the property shipped, and that, "No

contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed."

If the doctrine of the earlier cases in Ohio to the effect that a carrier can not, by contract, exempt himself from liability for full damages for loss occasioned by his negligence or wilful act, was in any degree modified by *Railroad Co.* v. *Hubbard, supra,* and *Pennsylvania Co.* v. *Shearer, supra,* that doctrine is restored by the above acts of the legislature, and the public policy of the state is thereby established.

It is not necessary to determine the effect of such a provision in a case where the loss was not occasioned by the gross fault or neglect of the carrier. We hold that the provision in question, as applied to the facts of this case, where there was no reduced freight rate and the loss was occasioned by the gross negligence of the carrier, is contrary to the public policy of the state, as evidenced by the acts of the legislature and the decisions of the courts of the state, and the court below was right in not enforcing it.

*Judgment affirmed.*

DUNLAP, P. J., and VICKERY, J., concur.